UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARLIS MATEUS,

        Plaintiff,

v.

LIBERTY UNION LIFE ASSURANCE
COMPANY, et al.,

        Defendants.
_____/

Case No. 1:16-cv-623

HON. PAUL L. MALONEY

## MEMORANDUM OPINION AND ORDER

Plaintiff Karlis Mateus was a participant in a welfare plan who lost his health insurance benefits. He brings an action requesting declaratory judgment and alleging breach of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* (ECF No. 1.) Plaintiff has filed a motion for summary judgment (ECF No. 25), and Defendants have filed cross-motions for summary judgment (ECF Nos. 26, 27). Upon careful review of the record, the Court has decided that the motions can be resolved without oral argument. *See* W.D. Mich. LCivR 7.3(d). For the reasons that follow, Plaintiff's motion is denied and Defendants' motions are granted.

### I. BACKGROUND

Plaintiff is the president, CEO, and an employee of M-Industries. He was formerly a participant in a sponsored group health insurance plan for M-Industries, which took effect on March 1, 2015. The joint plan administrators were Defendants Liberty Union Assurance Company ("Liberty Union") and Mid-America Associates ("Mid-America"). Defendant Liberty Union is a Michigan insurance company and provider of employee health insurance, and Defendant Mid-

America is a third-party administrator of Liberty Union's insurance plans. The plan contract required participants to pay monthly premiums to continue coverage, which were due on the first of the month. The plan provided:

> A grace period of 31 days, without interest, is allowed for payment of each monthly Plan billing statement including excess loss premium (except the first Plan month) during which coverage under the Plan shall remain in force. Coverage may terminate prior to the end of the grace period by the Plan Sponsor giving at least 31 days advance written notice of cancellation to the Administrator. Unless the Plan Sponsor notifies the Administrator in writing, failure by the Plan Sponsor to pay as billed within the Grace Period will cause this Plan to terminate retroactive at the end of the Grace Period. Coverage under the Plan will terminate on the last day of the month preceding the date the monthly Plan billing statement is due and unpaid. The Plan termination date will be pro-rated for any coverage adjustments in effect prior to the termination date of the Plan.

(Def.'s Mot. for Summ. J. Ex. B, ECF No. 26-1, PageID.512.)

On November 16, 2015, Liberty Union sent Plaintiff a bill for December's coverage, noting a due date of December 1, 2015, and that "coverage will terminate if full payment is not received before the end of the 31 day grace period. The grace period begins on the payment due date." (*Id.* at Ex. C, ECF No. 26-5, PageID.521.) On December 21, 2015, Liberty Union sent a notice to M-Industries that it had not received payment for the November 16 invoice and that "payment must be received in our office within 31 days of the due date or your coverage will terminate." (*Id.* at Ex. D, ECF No. 26-6, PageID.522.) Ten days later, M-Industries' insurance agent, Sarah Hall, emailed Corey Swiftney, who provided accounting services and bill payment for M-Industries, to inquire into whether the premium payment had been made because the grace period was about to expire. (*Id.* at Ex. E, ECF No. 26-7, PageID.523.) Swiftney responded at 3:10 P.M. on the same day, indicating that he was "ready to make the payment now but no one at the company answer[ed]." (*Id.*) Because Liberty Union did not receive the premium payment during the 31-day grace period, it sent a

termination notice to Swiftney on behalf of M-Industries on December 31, 2015, indicating that coverage was retroactively terminated effective at midnight on November 30, 2015. (Ex. G, ECF No. 26-9, PageID.527.)

On January 4, 2016, Brian Boyer, an employee at Liberty Union, responded to Swiftney that Liberty Union could not accept payments by phone and would only accept payment by check. (*Id.* at Ex. F, ECF No. 26-8, PageID.526.) Swiftney sent the check for the December premium on January 5, 2016, and the following day, Liberty Union received the payment. On January 8, 2016, Liberty Union notified M-Industries and Swiftney that the request for Plaintiff's reinstatement under the plan was rejected and returned M-Industries' check for the untimely December premium payment. (*Id.* at Ex. H, ECF No. 26-10, PageID.528.)

## II. LEGAL FRAMEWORK

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Once the moving party has carried its burden, the nonmoving party must set forth specific facts, supported by evidence in the record, showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The function of the district court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Resolution Trust Corp. v. Myers*, 9 F.3d 1548 (6th Cir. 1993) (citing *Anderson,* 477 U.S. at 249).

### III. ANALYSIS

#### A. ERISA Standard of Review

The Sixth Circuit "has repeatedly held that the appropriate determination in reviewing the decision of a plan administrator with respect to a claim for benefits is whether the decision was arbitrary, capricious, made in bad faith or otherwise contrary to law." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988). This standard of review is applied to these cases "in order to avoid 'excessive judicial interference with plan administration.'" *Id.* (quoting *Cook v. Pension Plan for Salaried Employees*, 801 F.2d 865, 870 (6th Cir. 1986)). "By upholding the decisions of an administrator that are rational in light of the plan's provisions and thus not arbitrary or capricious, the courts contribute to consistency and fairness in plan administration." *Id.*

#### B. Motions for Summary Judgment

Plaintiff seeks declaratory judgment that Liberty Union's interpretation of the welfare plan is erroneous. Plaintiff argues that there is no genuine dispute that Defendants wrongfully terminated his insurance coverage before the end of the 31-day grace period in breach of ERISA. (Pl.'s Mot.

for Summ. J. 7, ECF No. 25, PageID.86.) Plaintiff notes that the plan does not specify how the 31 days should be calculated. (*Id.*) As a result, Plaintiff contends that federal common law rules should control how to calculate the time by following the process laid out in Federal Rule of Civil Procedure 6. Under Rule 6, the Court should "exclude the day of the event that triggers the period" and "count every day, including intermediate Saturdays, Sundays, and legal holidays," and "include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." FED. R. CIV. P. 6. Because the 31-day grace period ended on January 1, 2016, a legal holiday, Plaintiff argues that he had until the next business day, January 4, 2016, to make a payment within the grace period.

Plaintiff also alleges that, because the group health plan was an "employee welfare benefit plan" and "welfare plan" that was established or maintained by an employer for the purpose of providing for its participants or their beneficiaries medical benefits, it is subject to ERISA. *See* 29 U.S.C. § 1002(1)(A). Plaintiff argues that, by violating the terms of the plan, Defendants also breached ERISA.

Defendants argue that, under the plain language of the plan, Plaintiff needed to pay his premium within the 31-day grace period. Because Plaintiff failed to make a timely payment, his coverage lapsed. Defendants contend that, regardless of whether the Court interprets the 31-day period language to end on January 1, 2016, or applies Rule 6 to conclude that the grace period ended on January 4, 2016, Plaintiff failed to timely pay his December premium. Liberty Union did not receive the payment until January 6, 2016, so Defendants assert that there is no actual controversy

meriting declaratory judgment. Likewise, Defendants argue that there was no breach of ERISA or the plan when Liberty Union terminated Plaintiff's coverage.

The Court agrees. Regardless of whether the grace period ended on January 1, 2016 or January 4, 2016, it is undisputed that Defendants did not receive payment until January 6, 2016. Although Plaintiff alleges that attempts were made, and rejected, to pay over the phone on December 31, 2015, Swiftney indicated that all payments to Liberty Union for the health insurance premiums were previously made through bill.com. (Def.'s Mot. for Summ. J. Ex. A, ECF No. 26-3, PageID.353.) Switfney did not attempt to pay for the December premium through bill.com. And he waited to overnight a paper check to Liberty Union until January 5, 2016. He admitted that he did not know why he did not overnight a check on January 4, 2016 after receiving the email from Boyer indicating that payment was not accepted over the phone. (*Id.* at PageID.371-72.) He also admitted that he did not know why he did not overnight a check on December 31, 2015. (*Id.* at PageID.372.) Thus, there is no genuine dispute of material fact—Defendants did not receive payment for the December premium during the 31-day grace period. In light of the plan's provisions, it was rational for the plan administrator to retroactively cancel the policy when payment was not received during the grace period. (*See* Def.'s Mot. for Summ. J. Ex. B, ECF No. 26-1, PageID.512.) Accordingly,

**IT IS ORDERED** that Plaintiff's motion for summary judgment (ECF No. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motions for summary judgment (ECF Nos. 26, 27) are **GRANTED**.

A judgment will enter in accordance with this memorandum opinion and order.

Date:   June 7, 2017                                       /s/ Paul L. Maloney
                                                           Paul L. Maloney
                                                           United States District Judge